# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| SHELLER, LUDWIG & SHELLER P.C., | : | |
| Defendant/Third-Party Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-2310 |
| EQUITRAC, | : | |
| Third-Party Defendant. | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                                                June ____, 2008

      Presently before me is third-party defendant Equitrac's motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6) the Third-Party Complaint of Sheller, Ludwig & Sheller, P.C.

("Sheller").  In Count I of the Third-Party Complaint, Sheller alleges breach of contract.  In

Count II, Sheller alleges unjust enrichment, and in Count III, Sheller alleges misrepresentation.

For the following reasons, I will grant Equitrac's motion as to Counts I and III and dismiss those

counts without prejudice, and I will deny the motion as to Count II.


## I.      Background

      On December 2003, Sheller, a law firm, entered into a lease agreement with Canon

Financial Services, Inc. ("Canon"), pursuant to which Sheller leased photocopy and facsimile

equipment.  (Third-Party Compl. Ex. A, at 4.)  The leased equipment included an Equitrac

system, intended to allow Sheller to count the number of copies made and to allocate the cost of

those copies to its clients' cases.  (*Id.* ¶ 20.)  Pursuant to the Canon lease agreement, Sheller

owed monthly payments of $5,195 (for all the leased equipment). (*Id.* at Ex. A, at 4.)

In addition to the broad Canon lease agreement, Sheller also entered into specific equipment lease agreements for each type of leased equipment with General Electric Capital Corporation ("GECC"). (*See id.* at 6-8.) The equipment lease agreement pertaining to the Equitrac system explains that GECC was the lessor, Sheller was the lessee, Office Tech was the supplier, and Sheller owed monthly payments of $695. (*Id.* at 6.)

Sheller's office manager signed the lease agreements, and she also signed Office Tech order forms for the leased equipment, one of which pertains to the Equitrac system. (*See id.* at 12.) In the order form's "special instructions" section someone wrote: "Delivery, installation by Equitrac included. Service for Equitrac system will be directly billed by Equitrac to Sheller, Ludwig & Badey." (*Id.*)

Throughout this memorandum, these various documents are referred to collectively as the "lease agreements." These lease agreements are the only contracts on which Sheller bases its claims. Sheller alleges that under the lease agreements, Office Tech and Equitrac were agents of the lessors, Canon and GECC.[1] (*Id.* ¶ 30, 41.)

In addition to the monthly payments provided for in the lease agreements, Sheller paid $24,194.20 for the Equitrac equipment.[2] Subsequent to the execution of the lease agreements, on

---

[1] Equitrac disputes that it was an agent of Canon or GECC. In support of its assertion that it was not an agent of Canon or GECC, Equitrac identifies language in the GECC equipment lease agreements stating that the supplier (Office Tech) and its representatives are not agents of GECC. (*Id.* at 6.) For purposes of this motion, an agency relationship between Canon or GECC and Equitrac is assumed based on the allegations in the Third-Party Complaint which must be accepted as true at this stage of the proceedings.

[2] The Third-Party Complaint does not explain when or to whom this payment was made.

numerous occasions Sheller contacted Equitrac representatives, requesting that the Equitrac

system be installed.  (*See id.* ¶ 24, Ex. C.)  In the spring of 2006, installation of the Equitrac

system finally began.  At this point, it was discovered that the Equitrac system Sheller contracted

for did not hold enough characters for the firm to decipher how many copies were made for each

client's case.  (*Id.* ¶ 26.)  However, one or all of the entities involved in the lease of the Equitrac

system had told Sheller that the Equitrac system being leased was suitable for Sheller's business

and could operate in conjunction with Sheller's case management system to track its copy costs.

(*Id.* ¶ 58.)

Equitrac then told Sheller that the Equitrac system required a software patch and that the

software patch would be paid for by Sheller.  (*Id.* ¶ 27.)  Neither Canon, GECC, Office Tech, nor

Equitrac agreed to pay for the software patch, and Equitrac never installed a fully operational

system.  (*Id.* ¶¶ 28-29.)  Although a fully operational Equitrac system was never installed, Canon

or GECC billed Sheller for the leased equipment.[3]  (*Id.* ¶ 30.)  Canon, GECC, Office Tech, and

Equitrac retained the amounts paid by Sheller for an operational Equitrac system.  Without a

fully operational Equitrac system, Sheller was unable to count the copies made for each client's

case.[4]  (*Id.* ¶ 22.)  As a result, Sheller was unable to recoup the cost of copies from its clients,

resulting in a loss of approximately $1.2 million.[5]  (*Id.* ¶ 22, 32.)

---

[3] On or about September 29, 2006, Canon assigned its right to receive payment under this
lease agreement to GECC.  (*Id.* ¶ 13.)

[4] Sheller asserts that because of the large number of copies it makes, it would be
"virtually impossible and extremely burdensome to count photocopies without an electronic
system in place."  (*Id.* ¶ 23.)

[5] Sheller also alleges that Canon or GECC, through Office Tech, overcharged Sheller.
(*Id.* ¶¶ 33-37.)  Sheller does not allege wrongdoing on the part of Equitrac with respect to the

On June 7, 2007, GECC filed a complaint against Sheller, alleging that Sheller had failed to make payments under the lease agreements. On September 10, 2007, Sheller answered the complaint and counterclaimed against GECC, alleging breach of contract, unjust enrichment, and misrepresentation. On September 21, 2007, Sheller filed the Third-Party Complaint against Canon, Office Tech, and Equitrac, making essentially the same breach of contract, unjust enrichment, and misrepresentation claims made in its counterclaim against GECC. The parties stipulated on February 12, 2008 and February 29, 2008 to the dismissal of the claim and counterclaims between GECC and Sheller and of Sheller's third-party claims against Canon and Office Tech. Only Sheller's third-party claims against Equitrac remain.

## II.     Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir.1980). When evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and any reasonable inferences that may be drawn therefrom must be viewed in the light most favorable to the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

overcharges.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964 (citations and alterations omitted).  Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted); *see also Phillips*, 515 F.3d at 232.  Allegations of fraud must be pleaded with greater particularity, as described in Part III.C, *infra*.

### III.   Discussion

#### A.      Count I:  Breach of Contract

In Count I, Sheller alleges breach of contract.  Specifically, Sheller alleges that the lease agreements "require[d] the delivery and installation of an Equitrac [s]ystem for which Sheller paid $24,194.20" and that "Equitrac, an agent of [Office Tech], was charged with the duty of providing and installing the Equitrac [s]ystem."  (Third-Party Compl. ¶¶ 40-41.)  Sheller further alleges that it "never received an operational Equitrac [s]ystem even though it paid for one."  (*Id.* ¶ 42.)

In its motion to dismiss, Equitrac asserts that the breach of contract claim must fail because "Sheller does not allege the existence of any contract between Sheller and Equitrac" and "Equitrac is not a party to the GECC lease agreement."  (Mot. 6.)  In the alternative, assuming the agency relationship Sheller asserts, Equitrac argues that "it is a basic tenet of agency law that an individual acting as an agent for a disclosed principal is not personally liable on a contract

between the principal and a third party unless the agent specifically agrees to assume liability."
(*Id.* at 7.)

Under Pennsylvania law, "a lease is a contract and 'is to be interpreted according to contract principles.'" *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001) (citing *Hutchinson v. Sunbeam Coal Corp.*, 519 A.2d 385, 389 (Pa. 1986)). To state a claim for breach of contract, Pennsylvania law requires a plaintiff to establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 224 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

Generally, privity of contract is necessary for a party to bring a breach of contract claim. *See Unique Techs., Inc. v. Micro-Stamping Corp.*, No. 02-6649, 2003 WL 21652284, at *2 (E.D. Pa. Apr. 15, 2003) (citing *Evans v. Otis Elevator Co.*, 168 A.2d 573, 575 (Pa. 1961); *Finney v. Finney*, 16 Pa. 380 (1851)). ). To succeed on a claim for breach of contract, a plaintiff must show "the existence of the contract to which the defendant is a party." *Viso v. Werner*, 369 A.2d 1185, 1186 (Pa. 1977); *see also Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991) ("It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract."). Thus, for Sheller to succeed on its breach of contract claim, it must show the existence of a contract to which Equitrac is a party.

Sheller has pled breach of the lease agreements only. It is apparent that Equitrac is not a party to the lease agreements. None of the lease agreements are signed by a representative of Equitrac or name Equitrac as a lessor or otherwise-bound party. The lease agreements instead evidence a contract between Sheller and Canon (*see* Third-Party Comp. Ex. A, at 4 ("CFS leases

to Customer . . . and Customer leases from CFS, . . . all the equipment described above . . . .")) and Sheller and GECC (*see id.* at 6 (naming GECC as the lessor)).  Sheller has thus failed to show the existence of a contract to which Equitrac is a party.

Sheller asserts that Equitrac's contractual obligations stem from Equitrac's agency relationship with GECC or Office Tech and Equitrac's "duty of providing and installing the Equitrac system."  (Resp. 4-5; Third-Party Comp. ¶ 41.)  Sheller argues in its brief that, in addition to simply being GECC's or Office Tech's agent, Equitrac assumed liability under the contract with respect to the sale and installation of the Equitrac system.  (Resp. 5-6.)  In support of its assertion, Sheller points to an Office Tech order form for an Equitrac system.  The order form includes handwritten provisions that "delivery, installation by Equitrac included" and with the provision that "service for Equitrac system will be billed by Equitrac to Sheller."  (*Id.* at 12.)

Pennsylvania law is clear that an individual acting as an agent for a disclosed principal is not personally liable on a contract between the principal and a third party unless the agent specifically agrees to assume liability.  *Casey v. GAF Corp.*, 828 A.2d 362, 369 (Pa. Super. Ct. 2003); *see also CGB Occupational Therapy, Inc. v. RHA/Pennsylvania Nursing Homes, Inc.*, No. 00-4918, 2001 WL 1175150, at *4 (E.D. Pa. Aug. 16, 2001) (applying the rule to the situation—analogous to the instant case—in which the principal and the third party to the agency relationship (the plaintiff) contracted, and the plaintiff sued the alleged agent).  Here, the alleged principals—GECC and Office Tech—clearly were disclosed.  Therefore, absent an agreement by Equitrac to assume liability under the lease agreements, Equitrac will not be liable for breach of the lease agreements.

The Third-Party Complaint does not specifically allege that Equitrac assumed liability for

delivery and installation of an operational Equitrac machine.  The Third-Party Complaint alleges

that, "[p]ursuant to the [l]ease [a]greement, the delivery and installation of the Equitrac [s]ystem

was to be performed by Equitrac" and that, "Equitrac, an agent of [Office Tech], was charged

with the duty of providing and installing the Equitrac [s]ystem."  (Third-Party Compl. ¶¶21, 41.)

Neither these statements nor any other allegations in the Third-Party Complaint suggest that

Equitrac assumed liability *to Sheller* under the lease agreements.  Therefore, I will dismiss this

claim, albeit without prejudice, giving Sheller the opportunity to amend its Third-Party

Complaint to allege, if it can, that Equitrac assumed liability to Sheller for delivery and

installation of an operational Equitrac machine and to provide supporting factual allegations

sufficient "to raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965.


      **B.**      **Count II:  Unjust Enrichment**

In Count II, Sheller alleges that Equitrac has been unjustly enriched by retaining the

amounts paid by Sheller for a fully operational Equitrac system without providing Sheller a fully

operational Equitrac system.  (Third-Party Comp. ¶¶ 48-56.)  In its motion to dismiss, Equitrac

makes two arguments regarding Sheller's unjust enrichment claim.  First, Equitrac asserts that

the existence of the lease agreements precludes Sheller's assertion of unjust enrichment.  Second,

Equitrac asserts that Sheller does not state a claim for unjust enrichment because Sheller has not

alleged that it conferred any benefit directly upon Equitrac (because the lease agreements require

payments to be made to GECC).[6]

Sheller's unjust enrichment claim is not barred by the existence of the lease agreements.

--------------------------------------------------

[6] Equitrac does not address the other elements of Sheller's unjust enrichment claim.

Equitrac is correct that "it has long been held in [Pennsylvania] that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006). This rule simply means, however, that a plaintiff cannot *recover* under a theory of unjust enrichment when an express contract governs the parties' relationship. A plaintiff may properly plead alternative theories of liability, including contract and unjust enrichment theories. *See United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1135 (E.D. Pa. 1991) ("Federal rules allow pleading in the alternative. Courts have permitted plaintiffs to pursue alternative theories of recovery based both on breach of contract and unjust enrichment, even when the existence of a contract would preclude recovery under unjust enrichment.").[7]

I will not dismiss Sheller's unjust enrichment claim for failure to allege that Sheller directly conferred benefits on Equitrac. To state a claim for unjust enrichment, a plaintiff must allege, inter alia, the existence of "benefits conferred on one party by another." *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000) (quoting 16 Summary of Pa. Jur. 2d *Commercial Law* § 2.2 (1994)). However, "[p]laintiffs need not have directly dealt with each defendant in order to allege a claim of unjust enrichment against them. The claim of unjust enrichment simply requires that plaintiff 'confer' benefits on a defendant; it does not require that plaintiff 'directly confer' those benefits." *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006) (citing *Com. ex rel. Pappert v. Tap Pharm. Products, Inc.*, 885 A.2d 1127, 1137-38 (Pa. Commw. Ct. 2005); *D.A. Hill Co. v. CleveTrust Realty Investors*,

---

[7] Furthermore, unless Sheller can in good faith allege that Equitrac assumed liabilities under the lease agreements, Sheller will not have a claim based on the existence of a contract.

573 A.2d 1005, 1009 (Pa. 1990) (holding that a subcontractor may recover from an owner under

a theory of unjust enrichment theory, even if the subcontractor does not have a direct contractual

relationship with the owner)); *see also Powers v. Lycoming Engines*, No. 06-2993, 2007 WL

2702705, at *3 (E.D. Pa. Sept. 12, 2007) ("The plaintiffs need not have purchased the product at

issue directly from [the defendant] to have 'conferred benefits on the defendant.'").

Sheller alleges that it paid $24,194.20 for the Equitrac system.  (Third-Party Compl. ¶¶

16, 40.)  Sheller also alleges that it made additional, monthly payments of $5,195 for all of the

leased equipment pursuant to the lease agreement.  (*Id.* ¶¶ 14, 49, 53.)  Presumably, $695 of that

monthly payment was for the Equitrac system.  (*See id.* Ex. A, at 6 (providing for a monthly

payment of $695 specifically for the Equitrac system).)  Thus, the reasonable inference to be

drawn from the Third-Party Complaint and its exhibits is that Equitrac received some portion of

the payments made by Sheller.  Assuming that Equitrac received payments made by Sheller (even

though such payments were not made directly to Equitrac), Sheller has sufficiently alleged that it

conferred a benefit on Equitrac.  Therefore, I will deny Equitrac's motion to dismiss as to this

claim.


C.      **Count III:  Misrepresentation**

In Count III, Sheller alleges misrepresentation.  Sheller alleges that "Canon . . . , GECC,

[Office Tech] and/or Equitrac, through their agents, made statements to Sheller regarding the

suitability of the Equitrac [s]ystem for Sheller's business, and its ability to operate in conjunction

with Sheller's caseload system so that its copy costs could be tracked."  (*Id.* ¶ 58.)  Sheller

further alleges that these statements were false, the agents who made these statements knew they

were false or acted negligently or recklessly as to the truth, these statements were made

intentionally to induce reliance by Sheller, Sheller reasonably relied on these statements, and as a

direct and proximate result, Sheller suffered damages.  (*Id.* ¶¶ 59-64.)  In its motion to dismiss,

Equitrac asserts that Sheller failed to plead fraud with specificity, as required by the Federal

Rules of Civil Procedure.[8]

Federal Rule of Civil Procedure 9(b) requires that in alleging fraud, "a party must state

with particularity the circumstances constituting fraud."  A plaintiff must "plead with

particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of

the precise misconduct with which they are charged, and to safeguard defendants against

spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. v. Southmost Mach.*,

742 F.2d 786, 791 (3d Cir. 1984).  The pleading must set forth the nature of alleged

misrepresentations, but it need not describe the precise words used or the exact time, place, or

date of the fraudulent conduct.  *Id.*  If time, place, and date are not pled, however, a plaintiff must

"use alternative means of injecting precision and some measure of substantiation into their

allegations of fraud."  *Id.*  "Plaintiffs . . . must allege who made a misrepresentation to whom and

the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir.

2004).

By using the phrase "and/or," Sheller's Third-Party Complaint does not allege that

Equitrac, specifically, made any "statements to Sheller regarding the suitability of the Equitrac

[s]ystem for Sheller's business, and its ability to operate in conjunction with Sheller's caseload

system so that its copy costs could be tracked" (Third-Party Compl. ¶ 58).  Instead, the Third-

---

[8]Sheller also interprets the claim under Rule 9(b), as will the court.

Party Complaint alleges that Canon, GECC, Stewart, or Equitrac (or some combination of these entities, or all of these entities) made fraudulent or negligent misrepresentations.  (*See id.*)  This allegation is insufficiently specific to meet the requirement, with respect to claims of fraud, that a plaintiff "allege who made a misrepresentation to whom," *Lum*, 361 F.3d at 224, and insufficiently specific "to place the defendants on notice of the precise misconduct with which they are charged," *Seville Indus. Mach.*, 742 F.2d at 791.  *See Saporito v. Combustion Eng'g, Inc.*, 843 F.2d 666, 675 (3d Cir. 1988) (finding allegations of fraud insufficiently pleaded where the complaint "does not indicate who the speakers were ('defendants *and/or persons acting under their direction and control*') or who received the information ('*certain C-E employees* other than plaintiffs')), *vacated on other grounds by Combustion Eng'g, Inc. v. Saporito*, 489 U.S. 1049 (1989).  Therefore, I will dismiss Sheller's fraudulent misrepresentation claim, albeit without prejudice and with leave to amend to bring this claim into compliance with the requirements of Rule 9(b).  *See* 2 James Wm. Moore et al., *Moore's Federal Practice* § 9.03[4] (3d ed. 2007).

## IV.    Conclusion

For the reasons stated above, I will grant in part and deny in part Equitrac's motion to dismiss Sheller's Third-Party Complaint.  I will grant Equitrac's motion as to Count I and will dismiss without prejudice this breach-of-contract claim.  Sheller will have leave to amend Count I to include allegations, with sufficient factual support, that Equitrac assumed liability to Sheller under the lease agreements for delivery and installation of an operational Equitrac machine.  I will also grant Equitrac's motion as to Count III's allegations of fraudulent misrepresentation,

and will dismiss without prejudice this claim.  Sheller will have leave to amend Count III to

plead its fraudulent misrepresentation claim with the particularity required by Federal Rule of

Civil Procedure 9(b).  I will deny Equitrac's motion as to Count II.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| SHELLER, LUDWIG & SHELLER, P.C., | : | |
| Defendant/Third-Party Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-2310 |
| EQUITRAC, | : | |
| Third-Party Defendant. | : | |
| | : | |

## Order

**AND NOW** this _____ day of June 2008, upon consideration of third-party defendant

Equitrac's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Third-

Party Complaint (Doc. No. 6); third-party plaintiff Sheller, Ludwig & Sheller, P.C.'s response

thereto; and Equitrac's reply, **IT IS HEREBY ORDERED** that:

1.   Equitrac's motion is **GRANTED** as to the breach of contract and fraudulent

misrepresentation claims in Counts I and III, respectively, of the Third-Party Complaint.

Sheller's breach of contract and fraudulent misrepresentation claims are **DISMISSED**

without prejudice and with leave to amend.  Sheller has twenty (20) days to file an

amended third-party complaint in accordance with the accompanying memorandum.

2.   Third-party plaintiff's motion is **DENIED** as to Sheller's unjust enrichment claim in

Count II of the Third-Party Complaint.


_____s/William H. Yohn Jr._____
William H. Yohn Jr., Judge